UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EDERLYN CHIQUINQUIRA
GONZALEZ FERNANDEZ,

           Petitioner,

   v.

JULIO HERNANDEZ et al.,

          Respondents.

CASE NO. 2:26-cv-01066-JNW

ORDER

## 1.  INTRODUCTION

This matter comes before the Court on Petitioner Ederlyn Chiquinquira Gonzalez Fernandez's Petition for a Writ of Habeas Corpus, Dkt. No. 1. While her habeas petition was pending, Respondents attempted to remove Gonzalez Fernandez on April 1, 2026. On April 2, 2026, Gonzalez Fernandez filed a motion for a temporary restraining order enjoining her removal. Dkt. No. 6. The Court provisionally granted the motion to maintain the status quo so that the Court could review the merits of the TRO motion after full briefing. Briefing is complete and the matter is ripe for resolution.

ORDER - 1

## 2. BACKGROUND

Petitioner Ederlyn Chiquinquira Gonzalez Fernandez is a 22-year-old citizen of Venezuela currently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 2 ¶¶ 2–3. Gonzalez Fernandez, with her mother and five-year-old daughter, sought asylum in the United States on September 27, 2024. Dkt. No. 12 ¶ 4. The next day, on September 28, 2024, she was served a Notice to Appear ("NTA") and released from custody. The NTA ordered that Gonzalez Fernandez appear before an immigration judge in Orlando, Florida on April 28, 2026. Dkt. No. 10-2 at 2. Gonzalez Fernandez, with her mother and daughter, moved to Ocala, Florida. Dkt. No. 2 ¶ 8. Gonzalez Fernandez built a life in Florida—she enrolled her daughter in school, and she began work at a restaurant and at a cleaning company. *Id.* ¶ 10. On November 23, 2025, Gonzalez Fernandez was arrested for a misdemeanor battery offense. Dkt. No. 12 ¶ 6. To her knowledge, no charges were ever filed. Dkt. No. 2 ¶ 13. On November 25, 2025, Gonzalez Fernandez was released from jail and then immediately taken into Immigration and Customs Enforcement's (ICE) custody. Dkt. No. 12 ¶ 7. On February 2, 2026, Gonzalez Fernandez was transferred from a Florida detention facility to the NWIPC. *Id.* ¶ 9.

On March 24, 2026, Respondents contend that Gonzalez Fernandez withdrew her applications for asylum and withholding of removal and protection under the Convention Against Torture, and requested Voluntary Departure, which the Immigration Judge ("IJ") granted. Dkt. No. 10-3 at 2. The voluntary departure order states that Gonzalez Fernandez is required to depart the United States by

ORDER - 2

April 23, 2026, otherwise the order converts into an order of removal to Venezuela. Gonzalez Fernandez's account of the March 24, 2026, hearing differs substantially. Gonzalez Fernandez contends that the IJ told her that she had no other choice but to return to Venezuela, and that she believed that returning to Venezuela was her only option. Dkt. No. 2 ¶ 21. Gonzalez Fernandez maintains that she fears returning to Venezuela due to the risk of persecution for her political beliefs. *Id.* On April 6, 2026, Gonzalez Fernandez appealed the order to the Board of Immigration Appeals. Dkt. No. 12 ¶ 11.

Gonzalez Fernandez's primary language is Spanish, Dkt. No. 2 ¶ 4. Before the hearing, her family had used their life savings to pay for a lawyer, who did not file anything or provide Gonzalez Fernandez with legal representation at her March 24, 2026, hearing. *Id.* ¶ 20. It is unclear from the record whether Gonzalez Fernandez was provided with an interpreter during the hearing. Respondents contend that Gonzalez Fernandez was represented by counsel at the hearing, citing to the voluntary departure order, Dkt. No. 10-3, which does not indicate as such. It is implied from Gonzalez Fernandez's briefing that she did not have representation during the hearing. *See* Dkt. Nos. 1, 2.

On April 1, 2026, Respondents served Gonzalez Fernandez with a notice of intent of removal. Dkt. No. 7 at 8–9. Respondents contend that they are attempting to effectuate Gonzalez Fernandez's voluntary departure order, but that they cannot do so while the Court's order on the TRO remains in effect. Dkt. No. 11 at 2.

ORDER - 3

### 3. DISCUSSION

**3.1   Legal standards.**

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Demore v. Kim*, 538 U.S. 510, 517 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

In addition to habeas relief, federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). "Where habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has 'the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them,' 'irrespective of the accompanying habeas petition.'" *Francisco Lorenzo v. Bondi*, Case No. 2:25-cv-02660-LK, 2026 WL 237501, at *6 (W.D. Wash. Jan. 29, 2026) (quoting *Roman*, 977 F.3d at 941–42).

ORDER - 4

A plaintiff seeking a permanent injunction must demonstrate "(1) that [he] ha[s] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

### 3.2 Re-detention must comport with due process, regardless of the detention statute that applies.

The parties dispute the statutory basis for Gonzalez Fernandez's detention. Gonzalez Fernandez contends that she is detained under 8 U.S.C. § 1226(a) and Respondents contend she is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). The Court need not resolve that dispute because the Due Process Clause applies to Gonzalez Fernandez's re-detention regardless of which statute governs her custody. Even assuming the Government is correct that § 1225(b)(2) applies, the constitutional question remains: was Gonzalez Fernandez deprived of her liberty without due process when ICE re-detained her without notice or a hearing? Courts in this District have consistently answered this question in the affirmative.[1]

---

[1] *See, e.g., Osuna Benitez v. Hermosillo*, Case No. 2:25-cv-02535-BAT, 2025 WL 3763932, at *3 (W.D. Wash. Dec. 30, 2025) (citing *Zadvydas v. Davis*, 533 U.S. at 693); *see also Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) (quoting *E.A. T.-B v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025)) ("[T]he fact 'that the Government may believe it has a valid reason to detain Petitioner does not

ORDER - 5

**3.3   Revocation of Gonzalez Fernandez's parole status and her re-detention without notice and a pre-deprivation hearing violates procedural due process.**

Respondents do not contest that Gonzalez Fernandez was re-detained on November 25, 2025, without notice, a stated reason, or a pre-deprivation hearing. Respondents imply that Gonzalez Fernandez was previously released under humanitarian parole. Dkt. No. 11 at 3–4 (stating that Gonzalez Fernandez is detained under Section 1225(b) and that the "sole means of release" under this statute is humanitarian parole).

Under *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976), courts weigh the private interest at stake, the risk of erroneous deprivation through existing procedures, and the Government's interest to determine what process is constitutionally required. All three *Mathews* factors favor Gonzalez Fernandez.

First, her private interest is perhaps at its height, as "[f]reedom from imprisonment—from government custody, detention, or other forms of physical

---

eliminate its obligation to effectuate the detention in a manner that comports with due process.'"); *Arrioja Blanco, et al. v. Hermosillo, et al.*, Case No. C26-493-MLP, 2026 WL 548056, at *2 (W.D. Wash. Feb. 27, 2026) ("Courts have held that noncitizens paroled or released from § 1225(b) custody retain a protected liberty interest in continued release and are entitled to procedural safeguards before being returned to custody, regardless of whether § 1225(b)(1) or (b)(2) applies."); *Bealter Reyes et al. v. Hermosillo et al.*, Case No. 2:26-cv-00270-TLF, 2026 WL 507678, at *2 (W.D. Wash. Feb. 24, 2026) ("[T]he Court need not consider whether there is a statutory basis . . . upon which petitioners may be lawfully detained . . . because even assuming a statute permits government detention of an individual, the Due Process Clause may provide procedural protections not found in the statue."); *P.T. v. Hermosillo*, Case No. C25-2249-KKE, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("To the extent that the Government's briefing suggests that Section 1225(b) should be the beginning and end of the Court's inquiry, this position is emphatically rejected.").

restraint—lies at the heart of the liberty protected by the Due Process Clause." *Zadvydas*, 533 U.S. at 690. Gonzalez Fernandez lived in the community for over a year before her detention. Until recently, she and her family had a pending application for asylum. Her five-year-old daughter and her mother live in the United States. Dkt. No. 2. Her liberty interest exists even when release is conditional and must be afforded substantial weight. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. Mar. 3, 2025) (collecting cases).

Second, the risk of erroneous deprivation is high. Respondents have not identified a reason for revoking Gonzalez Fernandez's parole status. No neutral arbiter has resolved the reasons for Gonzalez Fernandez's detention.

Third, Respondents' interest in re-detaining Gonzalez Fernandez without a hearing is low. The Ninth Circuit has recognized that the *Mathews* test "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). While the Government "clearly has a strong interest in preventing [non-citizens] from 'remain[ing] in the United States in violation of our law,'" *id*. at 1208 (quoting *Demore v. Kim*, 538 U.S. 510, 518 (2003)), that general interest does not translate into a specific interest in detaining individuals without any process whatsoever. Nothing prevented ICE from scheduling a hearing before or after it became aware of Gonzalez Fernandez's arrest record. *See E.A. T.-B.*, 795 F. Supp. 3d at 1323; *Garcia Larios, v. Bondi*, No. 2:26-CV-00629-TLF, 2026 WL 1078210, at \*5 (W.D. Wash. Apr. 21, 2026) (reaching same conclusion after considering *Rodriguez Diaz*).

ORDER - 7

All *Mathews* factors favor Gonzalez Fernandez and support finding that her detention violates procedural due process. *Aslan v. Wamsley et al.*, Case No. 2:25-cv-02698-JNW, 2026 WL 238675, at *3 (W.D. Wash. Jan. 29, 2026) (citing *E.A. T.-B.*, 795 F. Supp. 3d 1324). This forms an independent basis for her release.[2]

Respondents contend that Gonzalez Fernandez's case is "distinguishable" from the Court's prior decisions because she was granted voluntary departure on March 24, 2026. Dkt. No. 11 at 5. They argue that because she agreed to leave the country, the risk of erroneous deprivation is minimal. *Id.* at 7. The Court disagrees.

The due process violation in this case was complete on November 25, 2025, the day ICE re-detained Gonzalez Fernandez without notice or a hearing. What happened in her immigration proceedings four months later does not retroactively

---

[2] Courts in this district and elsewhere have consistently reached the same conclusion. *See, e.g.*, *Tessema v. Bondi,* No. C25-2330-JNW-MLP, 2025 WL 4033288, at *1 (W.D. Wash. Dec. 11, 2025), report and recommendation adopted, No. C25-2330-JNW-MLP, 2026 WL 84922 (W.D. Wash. Jan. 12, 2026); *Pineda v. Chestnut*, No. 1:25-cv-01970-DC-JDP (HC), 2026 WL 25510, at *5 (E.D. Cal. Jan. 5, 2026) ("Although Respondents allege in their opposition that Petitioner repeatedly violated the terms of her release [citation omitted], no neutral arbiter has determined whether those facts show that Petitioner is a flight risk or danger to the community."); *Tesara v. Wamsley*, Case No. C25-1723-KKE-TLF, 2025 WL 3288295, at *1, *6 (W.D. Wash. Nov. 25, 2025) (even when it alleges supervised release violations, the Government must provide notice and a pre-detention hearing to comply with due process); *Ledesma Gonzalez v. Bostock*, No. 25-cv-01404-GJL, 2025 WL 2841574, at *8–9 (W.D. Wash. Oct. 7, 2025). And a "post-deprivation hearing[ ] cannot serve as an adequate procedural safeguard because [it occurs] after the fact and [thus] cannot prevent an erroneous deprivation of liberty." *E.A. T.-B.*, 795 F. Supp. 3d at 1324. *Nguyen v. Bondi*, No. 2:25-CV-02723-RAJ, 2026 WL 183819, at *4 (W.D. Wash. Jan. 23, 2026) (revocation of an OSUP requires notice and a pre-deprivation hearing). *Tzafir v. Bondi*, No. 25-CV-02067-JHC-SKV, 2026 WL 74088, at *3-5 (W.D. Wash. Jan. 9, 2026) ("The Government's redetention of Petitioner with insufficient notice and no opportunity to be heard violates the due process protections afforded to her by the Constitution.").

ORDER - 8

cure the procedural deficiency that existed at the point of re-detention. A hearing on the merits of removal is not an adequate substitute for a pre-deprivation hearing on custody status. *See Cuervo Marin v. ICE Field Office Director*, No. C26-1071-KKE, 2026 WL 1123516, at *5 (W.D. Wash. Apr. 24, 2026) (rejecting the Government's argument that concluded removal proceedings "reduce[d] the risk of error," and finding that "the Court is unpersuaded that a hearing on the merits of Petitioner's removal is an adequate substitute for a pre-deprivation hearing on Petitioner's custody status").

Moreover, the voluntariness of the voluntary departure order is itself contested. Gonzalez Fernandez states that the IJ told her she had no other option and that she believed returning to Venezuela was her only choice. Dkt. No. 2 ¶ 21. She has since appealed the order. Dkt. No. 12 ¶ 11. The Court need not resolve this factual dispute because, regardless of the circumstances surrounding the March 24 hearing, the constitutional violation occurred in November 2025 when ICE re-detained Gonzalez Fernandez without any process at all.

## 3.4    The Government must follow the law if it re-detains Gonzalez Fernandez.

Having found due process violations, the Court must determine the appropriate remedy. A post-deprivation hearing cannot serve as an adequate procedural safeguard here because it occurs after the fact and thus cannot prevent an erroneous deprivation of liberty. *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *see also Kumar v. Wamsley*, No. 2:25-CV-01772-JHC-BAT, 2025 WL 2677089, at *3 (W.D. Wash. Sept. 17, 2025) ("[R]elease following post-deprivation procedures is

ORDER - 9

insufficient to remedy the alleged harm because the alleged harm, i.e., potentially erroneous detention, has happened and is continuing to occur."). Gonzalez Fernandez has now been detained for more than five months without any meaningful opportunity to challenge the basis for her custody. Her bond hearing was denied on jurisdictional grounds, not on the merits. Dkt. No. 1 ¶¶ 63–64; Dkt. No. 12 ¶ 8. Her immigration proceedings remain pending on appeal to the BIA. Dkt. No. 12 ¶ 11. Immediate release is the appropriate remedy. *See Garcia Larios*, 2026 WL 1078210, at *5–6 (ordering immediate release where petitioner's proceedings were ongoing); *Cuervo Marin*, 2026 WL 1123516, at *6 (same).

The Court further finds that issuing the requested injunctive relief is appropriate. Each of the four *eBay* factors supports this conclusion. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).Gonzalez Fernandez has suffered irreparable harm, through the violation of her constitutional right to due process and more than five months of unlawful detention. She has been separated from her family for over five months, causing them significant hardship. *See generally* Dkt. No. 2. No monetary remedy can compensate for the deprivation of physical liberty. The balance of hardships favors Gonzalez Fernandez, as the injunction requires only that the Government comply with the Constitution before re-detaining her. And the public interest is served by an order prohibiting the Government from violating the Due Process Clause.

Gonzalez Fernandez has also established a "cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United*

ORDER - 10

*States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). ICE has already detained her without due process, raising concerns that, absent injunctive relief, she may be subject to the same due process violation again. Several courts in this district have granted similar relief under comparable circumstances. *See, e.g.*, *Nguyen*, 2026 WL 183819, at *6; *Wana v. Bondi*, No. 25-cv-2321, 2025 WL 3628634, at *6 (W.D. Wash. Dec. 15, 2025) (prohibiting re-detention without notice and hearing); *Tzafir*, 2026 WL 74088, at *5 (same); *Yuksek v. Bondi*, No. 25-cv-2555, 2026 WL 60364, at *5 (W.D. Wash. Jan. 8, 2026) (same); *Do v. Scott*, No. 24-cv-2187, 2025 WL 3496909, at *6 (W.D. Wash. Dec. 5, 2025) (prohibiting re-detention without valid travel document and other specified conditions).

Accordingly, the Court prohibits Gonzalez Fernandez's re-detention unless the Government first provides written notice of the basis for the proposed re-detention and a hearing is held before a neutral decisionmaker at which the Government bears the burden of proving by clear and convincing evidence that Gonzalez Fernandez is a danger to the community or a flight risk. *See Garcia Larios*, 2026 WL 1078210, at *6 (citing *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)); *Cuervo Marin*, 2026 WL 1123516, at *6 (citing *Becerra*, 787 F. Supp. 3d at 1089).

### 3.5    The motion for a temporary restraining order is denied without prejudice.

On April 2, 2026, Gonzalez Fernandez moved for a temporary restraining order, seeking a single form of relief, to "enjoin[] Respondents from effecting the removal of Petitioner during the pendency of her habeas petition." Dkt. No. 6 at 11.

ORDER - 11

The Court has now ruled on the habeas petition, Dkt. No. 1., and thus denies the TRO motion as moot. *Nguyen v. Scott*, 796 F. Supp. 3d 703, 720 (W.D. Wash. 2025).

## 4. CONCLUSION

Accordingly, the Court orders as follows:

1.  The Petition for a Writ of Habeas Corpus is GRANTED. Dkt. No. 1.

2.  The Government must RELEASE Petitioner within TWENTY-FOUR (24) hours of this order, subject to the conditions of her most recent release order.

3.  Within FORTY-EIGHT (48) hours of this order, the Government must provide the Court with a status report confirming that Petitioner has been released from custody and informing the Court of the date and time of her release, and advising the Court of the current status of Petitioner's immigration proceedings, including whether the voluntary departure order has lapsed or converted to an order of removal.

4.  The Government may not re-detain Petitioner without first providing written notice of the basis for proposed re-detention and a hearing before a neutral decisionmaker at which the Government must prove by clear and convincing evidence that Petitioner is a danger to the community or a flight risk, except as authorized by 8 C.F.R. § 241.13(i)(1)-(2).

5.  Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. See Daley v. Ceja, 158 F.4th 1152, 1162 (10th Cir. 2025) (the Equal Access to Justice Act authorizes the

ORDER - 12

award of attorney's fees to petitioners who prevail against the government in immigration habeas actions).

Dated this 14th day of May, 2026.

Jamal N. Whitehead
United States District Judge

ORDER - 13